UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARJORIE V.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:21cv371 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since May 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: Lyme disease, cystitis with hematuria and hypothyroidism (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, can sit for six hours in an eight hour workday and stand and/or walk for two hours in an eight hour workday, is unable to climb ladders ropes or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

6. The claimant is capable of performing past relevant work as an accounting clerk and secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2017, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22-30).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on July 18, 2022. On August 29, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on September 30, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

3

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

Plaintiff was first diagnosed with Lyme disease in 2007 by a holistic nutritionist. (Tr. 911). She was relatively symptom-free until 2015 when she started to suffer from insomnia, anxiety, and fatigue. (Tr. 289, 293, 911). Her symptoms gradually worsened through 2016 until March 2017 when her fatigue became severe. (Tr. 324, 326, 338). By May 2017, her fatigue had become "so extreme that she 'literally [could not] function" about one day per week. (Tr. 352). She had previously been forced to give up all extra activities because of fatigue but could still manage her job. On weekends, she could manage nothing beyond rest. (Tr. 376). Lyme disease was confirmed via lab testing in September 2017. (Tr. 380, 454-55).

Despite some gradual improvement in energy levels with medication and supplements, *e.g.*, Tr. 392, 398, 727, Plaintiff has consistently complained of fatigue, "brain fog," difficulty concentrating, memory deficits, anxiety, insomnia, diffuse joint pain, swelling and numbness in

4

her hands and feet, overall weakness, depression, and mental exhaustion. (Tr. 370, 376, 379, 393, 398, 411, 412, 418, 419, 423, 429, 430, 434, 435, 536, 670, 710, 714, 718, 727, 853, 858, 906, 907, 908, 911, 940, 941, 994). Plaintiff has also been diagnosed with and treated for urinary urge incontinence. (Tr. 868).

At the hearing before the ALJ, Plaintiff testified that she hasn't worked for pay since May 2017. (Tr. 43). Her health was getting worse, she couldn't sleep and was having such extreme fatigue that she "just couldn't function anymore…." (Tr. 45). She still struggles with poor sleep and fatigue and "lack of energy." (Tr. 45-46). Before she stopped working, she was extremely fatigued, and was having mental and physical exhaustion. (Tr. 46). After 2017, she did experience some improvement, but only to the extent that she "was able to get out of the chair…." (Tr. 48). Plaintiff tried to work some after that slight improvement. She tried to work at her church doing some minor data entry, but she was only able to go twice; she "couldn't do it, just fatigue." (Tr. 48). She also tried to work at a library where she knew the branch manager. She tried to work two hours a week on her own schedule, but she couldn't handle two hours and had to leave early. She tried one-and-a-half hours but "the same thing kept happening." (Tr. 49). After a while, she had to cancel so much that she was not able to commit and stopped trying. (Tr. 49). Then she tried to volunteer one hour a week at a local school to mentor kids "from difficult home situations" but she "had so much fatigue" and knew she "couldn't show up" consistently enough, so she had to stop. (Tr. 49-50). Plaintiff testified that she also has pain in multiple parts of her body. Sometimes it's her lower back, or her legs, or her feet, or her knees, or her shins. (Tr. 52). "Things change from day-to-day, week-to-week, but yes," she does have "like an arthritic kind of pain kinda all over." (Tr. 53). She also has urinary "incontinence pretty badly, so [she's] in the bathroom all

5

day, all night" and "wear[s] Depends all the time." (Tr. 54).

In support of remand, Plaintiff argues that the ALJ erred in formulating the RFC. Specifically, Plaintiff contends that the ALJ failed to account for the mental limitations that he acknowledged were caused by Plaintiff's Lyme disease and also ignored Plaintiff's manipulative limitations. In assessing the severity of Plaintiff's mental impairments, the ALJ declined to find more severe limitations caused by those impairments because he believed that Plaintiff is "primarily limited by her Lyme disease." (Tr. 23, 24). Similarly, in weighing the opinions of the State agency's psychological consultants, the ALJ again noted that Plaintiff's "mental limitations are primarily caused by the fatigue, insomnia and brain fog caused by Lyme disease…." (Tr. 30). Yet, despite acknowledging that Plaintiff's Lyme disease has caused these cognitive limitations, the ALJ failed to account for them in his RFC assessment and failed to provide any justification for that omission. (Tr. 25). *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("If the ALJ thought that [the claimant's] obesity has not resulted in limitations on her ability to work, he should have explained how he reached that conclusion").

Plaintiff also complains of diffuse joint pain and weakness, which have been attributed to a combination of Lyme disease and polyarthropathy. (Tr. 379, 406). Specifically, Plaintiff has reported joint pain and numbness in her hands and fingers, trigger fingers, weakness and heaviness in her arms, the "lack of use of her hands [and] arms," radiating pain in her arms, difficulty with reaching and grabbing, frequent swelling of her hands, and "a lack of grip and difficulty opening jars and other things." (Tr. 344, 379, 404, 419, 429, 670, 717, 853, 858, 941). She has exhibited reduced grip strength on examinations, Tr. 854, 942, and in forms submitted to SSA, she explained that her hands cramp, swell, and get stiff. (Tr. 210, 242, 252). The pain and

6

weakness limit her ability to do chores around the house and she struggles to cut her own food. (Tr. 206, 207, 240, 250).

While the ALJ acknowledged some of this evidence in his brief recitation of the record, he offered no analysis of the issue of manipulative limitations and failed to account for any attendant restrictions in his RFC assessment. (Tr. 25-29). *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("…meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence") (citation omitted).

Dr. J. Sands, M.D., the reconsideration-level consultant, briefly acknowledged Plaintiff's reports and the grip strength testing results, yet he offered no explanation and cited no evidence to justify his conclusion that Plaintiff has no manipulative limitations. (Tr. 80-81, 83-84). Likewise, Joshua Eskonen, D.O., the initial-level consultant, offered even less analysis and support for his conclusion than did Dr. Sands. (Tr. 65-66, 68-70).

This Court agrees with Plaintiff that the ALJ's RFC assessment is incomplete and inadequately supported. The ALJ failed to account for any restrictions due to Plaintiff's cognitive or mental limitations and also failed to account for any limitations related to Plaintiff's hand and arm pain, weakness, swelling, and stiffness. As the ALJ failed to provide any explanation for these omissions, remand is warranted.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED

AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 14, 2022.

                                                s/ William C. Lee  
                                                William C. Lee, Judge  
                                                United States District Court